**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-81407-CV-MIDDLEBROOKS

TODD BARKET,

Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent.
______________________________________/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**(28 U.S.C. § 2254)**

**THIS CAUSE** is before the Court upon the *pro se* Petition for Writ of Habeas Corpus ("Petition") (DE 1) brought pursuant to 28 U.S.C. § 2254 by Petitioner Todd Barket ("Petitioner"). In the Petition, Petitioner challenging his convictions and sentences following a jury verdict for murder with a deadly weapon and robbery with a deadly weapon entered in *State v. Barket*, No. 2019CF02897 (15th Jud. Cir.) in and for Palm Beach County, Florida. Respondent concedes the Petition is timely and the claims raised exhausted in the state courts but argues Petitioner is not entitled to habeas corpus relief on the merits. (DE 13 at 7, 8–24). I have reviewed the Petition (DE 1), the Response (DE 13) filed by the Respondent, Secretary, Florida Department of Corrections (the "Respondent" or "State"), Petitioner's Reply (DE 16) together with the relevant state court records (DE 14) and transcripts (DE 15).[1] For the reasons discussed below, the Petition is **DENIED.**

[1] The Court takes judicial notice of supporting exhibits filed in this case and information available on-line in the state court proceedings. *See* Fed. R. Evid. 201; *Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (quoting *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) ("A court may take judicial notice of its own records and the records of inferior

## I. BACKGROUND

On April 18, 2019, Petitioner was charged in a two-count indictment with first-degree murder with a deadly weapon and robbery with a deadly weapon. (DE 14-1, Ex. 1 at 2–3). The State alleged that on August 24, 1998, Petitioner robbed and killed Sondra Better at her place of employment, Lu Shay's Consignment Store in Delray Beach, Florida. (*Id.*, Ex. 2 at 6). Police found Better lying on the floor in a large pool of blood; nearby there were two heavy decorative balls that were covered in Better's blood. (*Id.*) A third ball was found on a wooden tray inside the store; latent fingerprints were recovered from the third ball. (*Id.* at 6–7). Police found an empty box that, earlier in the day, had contained a cake cutter. (*Id.*) Police observed that Better appeared to have suffered blunt force trauma to her head and hands as well as stab wounds to the back of her neck. (*Id.* at 6). Blood droplets from a common unknown source were found between the body and the cash register, inside the cash register drawer, and on the sidewalk outside of the store. (*Id.*) A witness who was shopping in the store around closing time on the day of the murder told police that she saw a white male with light-colored hair in his late 20s or early 30s approximately six feet tall talking with Better about the price of a couch. (*Id.* at 7).

In 2018, police submitted the blood DNA to Parabon Nanolabs for phenotype testing, which revealed that the blood was left by a white male with blond hair. (*Id.*, Ex. 3 at 14). In January 2019, police were notified that the latent fingerprints recovered from the decorative ball belonged to Petitioner, who had submitted his fingerprints as a part of an employment background check in December 2018. (*Id.*, Ex. 2 at 7).

---

courts.")). Also, unless otherwise noted, the Court relies on the pagination generated by the Case Management/Electronic Case Files ("CM/ECF") system, which appears in the header on all filings. The notation "DE" refers to the specific docket entry on CM/ECF.

Through driver's license records, police confirmed that Petitioner lived in Palm Beach County at the time of the murder. (*Id.* at 8). In addition, Petitioner's driver's license photos revealed that he was blond and would have been 29-years old at the time of the murder. (*Id.*) Petitioner's 2002 driver's license photo showed a scar on his face that was not present in his 1997 photo. (*Id.*, Ex. 3 at 14).

Police applied for and attained a search warrant for Petitioner's DNA. (*Id.*, Ex. 3 at 11–16). Petitioner, through counsel, moved to suppress the DNA evidence seized pursuant to the warrant, arguing that the warrant affidavit contained material omissions that, if included, would have defeated probable cause. (*Id.*, Ex. 4 at 18–33). Specifically, Petitioner argued that the affidavit should have included (1) the spatial separation of the third decorative ball with his fingerprints from the two other balls that were covered in blood, and (2) the disclaimer of warranties contained in the terms of service for the phenotype testing by Parabon Nanolabs. (*Id.* at 28–31). The trial court denied the motion to suppress, finding that even if the affidavit had included the spatial distance of the third decorative ball, probable cause existed based on other evidence, and the disclaimer of warranty by Parabon Nanolabs did not render the results unreliable. (*Id.*, Ex. 5 at 35–36).

Petitioner proceeded to trial, and testified in his own defense. (DE 15-1, at T. 1052–81). He admitted to being in Lu Shay's on the day of the murder and that he took all the money from the cash register. (*Id.* at T. 1070–73). Petitioner denied seeing Better or anyone else in the store on that occasion. (*Id.* at T. 1075, 1080). Petitioner conceded that his blood was in the store, but he said that he had no recollection of cutting himself; he speculated that he may have cut himself earlier while working and reopened the cut when putting his keys in his pocket. (*Id.* at T. 1078–79). He also testified that he and his wife went to the store on another occasion about 10 days prior

to the murder and that he handled one of the three decorative balls on that initial visit. (*Id.* at T. 1067–68). He testified that the scar on his face was from a dog bite that occurred on September 14, 1997. (*Id.* at T. 1064–66).

The jury found Petitioner guilty of first-degree murder and robbery. (*Id.* at T. 1227–28). Petitioner was sentenced to life in prison. (*Id.* at T. 1236).

Petitioner appealed his convictions and sentences to the Fourth District Court of Appeal ("Fourth DCA") raising the following claim: the trial court erred in allowing the State to introduce evidence of Petitioner's DNA found at the scene because the affidavit for search warrant did not inform the judge that: (1) the decorative ball with Petitioner's fingerprints was found away from the body and the other two balls, and, (2) Parabon Nanolabs did not guarantee the reliability of its results. (DE 14-1, Ex. 6 at 38–57). On October 15, 2020, the Fourth DCA affirmed without a written opinion. (DE 14-1, Ex. 9). *Barket v. State*, 304 So. 3d 337 (Fla.4th DCA. 2020).

On March 9, 2021, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 ("Rule 3.850 Motion"), which he amended on October 26, 2021. (DE 14-1, Ex. 10 at 100–30). In the Amended Rule 3.850 Motion, Petitioner raised the same twelve grounds of ineffective assistance of trial counsel that he asserts in his Petition. (*Id.*)

On February 1, 2024, the trial court entered an Order denying the Amended Rule 3.850 Motion, adopting the facts, legal analysis, and conclusions of law contained in the State's response. (DE 14-8, Ex. 13 at 134–39). Petitioner filed a Motion for Rehearing, which was denied by the trial court on May 15, 2024. (*Id.*, Exs. 14–15, 141–78, 180–82). Petitioner appealed the trial court's Order denying the Amended Rule 3.850 Motion. (*Id.*, Ex. 16 at 184–227). On May 8, 2025, the appellate court *per curiam* affirmed the trial court's denial of the Amended Rule 3.850 Motion. (*Id.*, Ex. 17 at 229). *Barket v. State*, 410 So. 3d 648 (Fla. 4th D.C.A. 2025).

C. **<u>§ 2254 Federal Habeas Corpus Petition</u>**

On October 9, 2025,[2] Petitioner filed a § 2254 Petition, raising eleven claims of ineffective assistance of trial counsel and one claim of cumulative error. (DE 1). He argues that trial counsel was ineffective in failing to:

(1) file a motion to suppress evidence of the cake cutter box;

(2) move for a mistrial or object to the State's introduction of the cake cutter box;

(3) move for a mistrial or object to misleading/false testimony by State witness Robert Stevens;

(4) file a motion to suppress evidence of a blood trail;

(5) properly question witnesses about the blood trail and other evidence;

(6) call expert witnesses;

(7) call exculpatory witnesses;

(8) object to false statements by the State during closing statements;

(9) object to the State's use of a still video rather than a 35mm photograph of evidence;

(10) use peremptory challenges during voir dire to remove jurors who disclosed potential bias; and

(11) properly argue the motion for judgment of acquittal.

(*Id.* at 6–18). In claim 12, Petitioner contends that the above-listed errors by trial counsel, considered cumulatively, amount to ineffective assistance. (*Id.* at 18–19).

---

[2] Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (citing *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999)).

## II. PROCEDURAL DEFENSES

### A. <u>Statute of Limitations Defense</u>

Respondent explicitly concedes that this federal proceeding was timely instituted because there was less than one-year untolled during which no postconviction motions were filed. (DE 13 at 7). Although I need not determine whether waiver of the limitations defense is accurate, it appears that the Respondent's argument is correct. *See* 28 U.S.C. §2244(d)(1)–(2); *Wood v. Milyard*, 566 U.S. 463, 473 (2012) (citing *Day v. McDonough*, 547 U.S. 198, 210–11 (2006)).[3] Consequently, I will deem the claims raised in the Petition to have been timely filed.

### B. <u>Exhaustion Defense</u>

Respondent has also explicitly waived the exhaustion defense, conceding that all claims raised in the Petition were exhausted in the state forum on direct appeal and during state postconviction proceedings. (DE 12 at 7). It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. *See* 28 U.S.C. § 2254(b)(1); *Preston v. Sec'y*, *Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (quoting *Lucas v. Sec'y*, *Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012)). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. *See Preston*, 785 F.3d at 457; *Baldwin v. Reese*, 541 U.S. 27, 33–34 (2004). Respondent's concession regarding exhaustion appears to be warranted, and because Respondent

---

[3] In *Wood*, the United States Supreme Court held that a district court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited. *Wood*, 566 U.S. at 473*; Green v. United States*, 735 F. App'x 687, 688 (11th Cir. 2018) (citing *In Re Jackson*, 826 F.3d 1343, 1348 (11th Cir. 2016) (citing *Day*, 547 U.S. at 209–210 and then *Wood*, 566 U.S. at 473)).

has waived this defense, I need not determine whether a precise argument was properly exhausted and instead will address the merits of the claims below.

## III. GOVERNING LEGAL PRINCIPLES

### A. <u>Standard of Review</u>

Since this case was filed long-after April 24, 1996, my review of this Section 2254 Petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Ledford v. Warden*, *Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). The AEDPA ensures that federal habeas corpus relief works to "[g]uard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *See Greene v. Fisher*, 565 U.S. 34, 38 (2011); *Ledford*, 818 F.3d at 642. The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (citations omitted). The AEDPA standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 420 (2014). It imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r*, *Ala.*, *Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *See Meders v. Warden*, *Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that

adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 182; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

Under the AEDPA, a federal court may not grant habeas relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017). "And a state-court adjudication involves an 'unreasonable application of' clearly established federal law if the decision was 'so obviously wrong that its error lies beyond any possibility for fairminded disagreement.'" *Bowen v. Sec'y, Fla. Dep't of Corr.*, 92 F.4th 1328, 1332 (11th Cir. 2024) (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020)).

Further, for purposes of federal habeas review, "clearly established federal law" consists of the "[h]oldings, as opposed to the dicta, of [the Supreme Court's] decisions at the time of the relevant state court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Lee*, 726 F.3d at 1192 (citation omitted). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction becomes final does not control the disposition of the petitioner's habeas proceeding." *Gary v. Hall*, 558 F.3d 1229, 1254 (11th Cir. 2009) (citing *Newland v. Hall*, 527 F.3d 1162, 1196–1201 (11th Cir. 2008)).

Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Fillmore v. Perry*, 163 F. App'x 819, 820 (11th Cir. 2006) (citing *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). Thus, to warrant relief, Petitioner must show that the state court ruling was "[s]o lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lee*, 726 F.3d at 1192 (quoting *Harrington*, 560 U.S. at 101–02). An unreasonable application of federal law differs from an incorrect application of federal law. *Renico*, 559 U.S. at 773 (citation omitted). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's . . . determination of the facts is unreasonable only if no fairminded jurist could agree with the state court's determination . . . ." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Where "[n]o state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . Instead, the claim is reviewed *de novo*.'" *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017) (alteration in original) (quoting *Cone v. Bell*, 556 U.S. 449, 472 2009)). Even where a state court decision "addresses some but not all of a defendant's claims," that decision is an adjudication "on the merits" for purposes of the AEDPA. *See Johnson v. Williams*, 568 U.S. 289, 298–99 (2013) (observing some claims may be too insubstantial to merit discussion). The United States Supreme Court has cautioned that "[f]ederal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy caseload shouldered by many appellate courts, "[o]pinions issued by these courts must be read with that factor in mind." *Lee*, 726 F.3d at 1212 (quoting *Johnson*, 568 U.S. at 299–300). In any event, federal courts are authorized to deny federal relief when the claim is subject to rejection under *de novo* review, regardless of whether the AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts can deny writs of habeas corpus

under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if her claim is rejected on *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767, n.16 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Connor would not be entitled to habeas relief even under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

## B. Ineffective Assistance of Counsel Principles

Petitioner raises twelve claims of ineffective assistance of counsel which are governed by the U.S. Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013) (citations omitted). The *Strickland* test requires Petitioner to demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficiency resulted in prejudice. *See Strickland*, 466 U.S. 668 at 694. Deficient performance requires Petitioner to demonstrate counsel's actions were unreasonable or fell below prevailing professional competence demanded of defense attorneys. *Id.* at 688. The *Strickland* deficiency prong does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Even with the benefit of hindsight, where counsel's decision appears unwise, it will only be ineffective if it was so unreasonable no attorney would have chosen it. *Id.* at 1099. *Strickland*'s prejudice prong requires Petitioner to establish that, but for counsel's deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If Petitioner cannot meet one of *Strickland*'s prongs, the Court need not address the other prong. *Id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

Further, when a habeas petitioner alleges that his counsel was ineffective—in violation of the Sixth Amendment of the Constitution—but also that the ineffectiveness was based on the failure of counsel to raise a state law claim, federal courts can review whether the state court properly applied *Strickland*. *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1295 (11th Cir. 2017). However, the federal habeas court is prohibited from second-guessing any application of state law that was relevant to the state court's resolution of the *Strickland* claim. *Id.* ("And although 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that [trial] counsel failed to raise turns on state law.") (citation omitted); *see also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (accord) (Where the Florida courts "[a]lready ha[ve] told us how the issues would have been resolved under Florida state law had [trial counsel] done what [petitioner] argues he should have done," "[f]ederal habeas courts should not second-guess them on such matters."). Finally, bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## IV. DISCUSSION

### A. Counsel's Failure to File Motion to Suppress

In claim 1, Petitioner asserts that trial counsel was ineffective for failing to file a motion to suppress evidence related to the cake cutter box based on allegations of false testimony by law enforcement and evidence tampering. (DE 1 at 6–7). Respondent argues that Petitioner's claim is conclusory and speculative because he does not allege any facts to support a claim that tampering occurred. (DE 13 at 12–14).

Other than Petitioner's self-serving allegations, there is no evidence that the cake cutter box was corrupted in some way. *See Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support ineffective assistance of counsel claim). Furthermore, trial counsel did not ignore potential shortcomings in the investigation and collection of the cake cutter box; he pointed out to the jury that there was no picture of the box at the scene. (DE 15-1 at T. 300–01, 1145–48). He also questioned the officer who took the box into evidence about the lack of a marker and photograph showing the box with a blood drop at the scene. (*Id.* at T. 606–07). Petitioner cannot establish deficient conduct by challenging his attorney's strategic choice to highlight the shortcomings of the investigation and processing of the cake cutter box rather than moving to suppress it altogether. *See Green v. Nelson*, 595 F.3d 1245 (11th Cir. 2010) (distinguishing between a tactical decision to not move to suppress, which is not deficient conduct, and a failure to move to suppress based lack of understanding the law and evidence, which can be deficient conduct).

Finally, even if trial counsel could have shown that the cake cutter box was opened, closed or moved during the investigation, as Petitioner now alleges, there is no record evidence to negate the existence of Petitioner's blood inside the box, particularly in light of his admission that he was at the scene and bleeding. (DE 15-1 at T. 1078–79, 1086–88). Accordingly, Petitioner cannot show that had trial counsel filed a motion to suppress the cake cutter box that the trial court would have granted the motion. Thus, even if the Court presumes that failure to file the motion was deficient conduct, Petitioner cannot establish *Strickland* prejudice. Consequently, the state court's decision was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence

presented. Accordingly, claim 1 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland.*

**B. Counsel's Failure to Object to Introduction of Cake Cutter Box or Move for Mistrial upon its Introduction**

In claim 2, Petitioner asserts that trial counsel was ineffective for failing to object or move for mistrial when the cake cutter box was introduced into evidence, resulting in loss of the ability to raise the issue on appeal. (DE 1 at 8–9). Respondent argues that Petitioner cannot establish *Strickland* prejudice through failure to preserve an issue for appeal. (DE 13 at 14). Additionally, Respondent argues that because there was no evidence of tampering, there is no likelihood that an objection to the introduction of the item would have been sustained or a motion for mistrial on this basis would have been granted. (*Id.* at 15).

The record shows that trial counsel used the failures of the investigators to cast doubt on the State's case by repeatedly emphasizing to the jury how the law enforcement failed to mark and photograph the box and by pointing out that it is the only instance of a blood droplet that is not photographed. (DE 15-1 at T. 1145–47). In other words, Petitioner cannot show that his attorney was ineffective because he did not appreciate the inconsistencies in the treatment of the cake cutter box at the scene and in the procedures used in taking it into evidence. At most, Petitioner has shown that his attorney made a tactical decision to undercut the validity of the evidence by demonstrating a sloppy investigation rather than attempting to exclude the evidence completely. Such a tactical decision cannot be deficient performance. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1295 (11th Cir. 2014) (holding that a lawyer's decision on whether to "object—and when, and in what form—are tactical choices consigned by *Strickland* to a lawyer's reasoned professional judgment.").

Furthermore, Petitioner's speculation about how the box was found at the scene and taken into evidence by law enforcement is not sufficient to establish that an objection or motion for mistrial would have been successful. This is particularly true here because, on cross-examination, Petitioner admitted that his blood was found inside the cake cutter box and he had no explanation for how it came to be there. (DE 15-1 at T. 1086). Therefore, even if Petitioner could establish that it was unreasonable for trial counsel to not object or move for a mistrial when the cake cutter box was introduced, he cannot show a reasonable probability that the outcome of the proceeding would have been different had his counsel done so.[4] Accordingly, the state court's decision was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 2 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

## C. <u>Counsel's Failure to Move for a Mistrial or Object to Misleading/False Testimony by State Witness Robert Stevens</u>

In claim 3, Petitioner argues that trial counsel was ineffective for failing to move for a mistrial or object to the misleading and false testimony of former Delray Beach Police Detective Robert Stevens describing a "blood trail" at the scene. (DE 1 at 10). Petitioner contends that counsel's failure prevented him from raising the issue on appeal. (*Id.*) Respondent argues that

[4] Respondent is correct that Petitioner cannot establish prejudice by arguing that an alleged error was not preserved for appeal. "The Supreme Court in *Strickland* told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal." *Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) (citing *Strickland*, 466 U.S. at 694–95.

Detective Stevens's testimony, viewed in its entirety, fairly characterized where blood was found throughout the store. (DE 13 at 16–17).

First, Petitioner has made no showing that the Stevens's testimony was false or misleading. During direct examination, Stevens described the blood evidence as follows:

> Q: To your knowledge, was there some DNA collected at the scene?
>
> A: Yes.
>
> Q: And what type of DNA would it have been and from where, if you recall?
>
> A: There was a blood evidence trail that led from where Miss Better was in the store to the cash register and then out the front door and there was some in the parking lot.

(DE 15-1 at T. 779). Petitioner argues that "no blood trail of any sort, in any direction originates at the victim. No blood was found in the parking lot. Only blood matching the Petitioner found at the scene was located at three discrete locations, none of which were near or around or leading too [sic] or from the victim." (DE 1 at 10). During cross examination, trial counsel elicited clarification from Detective Stevens about the blood collected from the scene:

> Q: And there were a lot of blood samples that were collected from the scene, correct?
>
> A: Yes
>
> Q: From kind of all over the scene, right?
>
> A: In the area where the crime of violence occurred to the cash register and out the front door.

***

Q: And you want the lab to test everything because you had multiple blood drops and there could be -- belong to multiple people?

A: Yes. The blood drops that were important were the ones that led from where the -- where the crime occurred to the cash register and out the front door. That would have been the person that we believed was casting off blood as they fled the store.

(DE 15-1 at T. 802, 804–05). Detective Stevens is describing the collection of DNA evidence at the scene and explaining why it was more important for blood to be collected from certain areas rather than others. He does not offer any testimony about where Petitioner's DNA was located. Therefore, Petitioner has not shown trial counsel's performance was deficient in not objecting to or moving for a mistrial in relation to Detective Steven's testimony.

Furthermore, Petitioner's only allegation of prejudice is that the challenge to Stevens's testimony could not be raised on appeal, which is insufficient to establish *Strickland* prejudice. *Purvis*, 451 F.3d at 739. Petitioner makes no allegation that the outcome of his trial would have been different had trial counsel objected to or moved for a mistrial based on Stevens's testimony regarding the blood evidence. Importantly, Petitioner admits his blood was located at precise locations around the scene. (DE 15-1 at T. 1078–79, 1086–88). And trial counsel emphasized to the jury during closing arguments that there was no evidence of Petitioner's blood near Ms. Better's body. (*Id.* at T. 1145). Therefore, even if Petitioner could show that Detective Steven's testimony about the blood evidence was false or misleading, there is no likelihood that the jury would have reached a different verdict in this case. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence

presented. Therefore, claim 3 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**D. Counsel's Failure to File a Motion to Suppress the Evidence of Blood Trail**

In claim 4, Petitioner argues that trial counsel failed to move to suppress Detective Stevens's false testimony about where blood was found and collected. (DE 1 at 11). Respondent argues that Detective Stevens's testimony regarding blood at the scene and its collection was neither false nor misleading. (DE 13 at 17). Additionally, Respondent contends that Petitioner cannot demonstrate prejudice because even if Stevens's testimony about the blood evidence had been excluded from the trial, there is no reasonable probability of a different outcome. (*Id.*)

I have already determined that Petitioner failed to show that Stevens's testimony about the blood evidence was false or misleading. *See supra* Section IV.C. At most, Petitioner has raised a disagreement with Stevens's characterization of the blood found at the scene as a "trail." Nevertheless, Petitioner admitted that he was bleeding while he was in the store and that his blood was found in specific locations at the scene (DE 15-1 at T. 1078–79, 1086–88). Moreover, Stevens's testimony was not focused solely on where Petitioner's DNA was found at the scene. In short, Petitioner has offered no grounds upon which trial counsel could have based a motion to suppress Detective Stevens's description of blood found at the scene. Therefore, he cannot demonstrate deficient performance in electing to not file an unsupportable motion. *See Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.")

As to the prejudice prong, Petitioner makes no specific allegations of prejudice. Eyewitness testimony and Petitioner's admission place him at the scene within minutes of Ms. Better's murder. (DE 15-1 at T. 367–71, 1070–71). Petitioner admits that he stole money from the cash register.

(*Id.* at T. 1072–74). There was evidence of defensive wounds on Ms. Better's hands. (*Id.* at T. 722–23). Petitioner admitted that he bled at the scene. (*Id.* at T. 1078–79). Even without Detective Stevens's testimony describing blood at the scene and its collection, the evidence was sufficient for the jury to find Petitioner guilty beyond a reasonable doubt. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [ ] guilt also makes it obvious that [the petitioner] cannot show *Strickland* prejudice.") Because there is no likelihood that the jury would have reached a different verdict in this case even had Detective Stevens's testimony about the blood evidence been absent, Petitioner has not established *Strickland* prejudice. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 4 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**E. <u>Counsel's Failure to Properly Question Witnesses about Evidence at the Scene</u>**

In claim 5, Petitioner argues that trial counsel failed to sufficiently questions witness in order to clarify for the jury inconsistent testimony, contradictory testimony, and lapses in crime scene procedures. (DE 1 at 12–13). Respondent argues that Petitioner's claims of false testimony and manufactured evidence are belied by the record. (DE 13 at 18). Respondent further argues that there is no reasonable probability that additional efforts by trial counsel to challenge the evidence collection procedures at the scene would have altered the outcome of this case. *Id.*

The only specific evidence Petitioner mentions in this claim is the blood found in the cake cutter box. (DE 1 at 12). Crime scene investigator Robert Held testified regarding the blood droplet found inside the cake cutter box; he stated that he collected the entire box as well as cut out the

piece of cardboard containing the blood droplet. (DE 15-1 at T. 536–39). That piece of cardboard was introduced into evidence as the State's Exhibit 9. (*Id.* at T. 535). Held testified that he found a drop of blood on the tabletop underneath the cake cutter box. (*Id.* at T. 536–37). During cross-examination of Held, trial counsel elicited his concession that he did not photograph or place an evidence marker by the cake cutter box or the blood inside and underneath it. (*Id.* at T. 607–08). Trial counsel further elicited that Held did not process the outside of the box for DNA. (*Id.* at T. 608). While Petitioner continues to emphasize that crime scene investigators should have photographed the box at the scene, Petitioner fails to explain what additional questions trial counsel should have asked about the box and the blood underneath it or how counsel could have shown that the evidence was somehow tainted. Thus, Petitioner has not shown deficient conduct.

Furthermore, Petitioner has not shown any probability that additional questions by trial counsel regarding the cake cutter box and the blood found under and inside of it would have altered the outcome of the trial. As explained above, other evidence established that Petitioner was on the scene around the time of the murder, the victim had defensive wounds on her hands, Petitioner was bleeding, he left blood droplets in three locations at the scene, and he stole all the cash from the cash register. *See supra* Section IV.D. Therefore, even if trial counsel could have questioned witnesses further to somehow convince the jury that the cake cutter box and the associated blood was tainted, the remaining evidence was sufficient for the jury to find Petitioner guilty beyond a reasonable doubt. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 5 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**F. <u>Counsel's Failure to call Expert Witnesses</u>**

In claim 6, Petitioner argues that trial counsel was ineffective because he failed to call expert witnesses in the field of forensics, anthropology, medical trauma, and crime scene analysis and procedure. (DE 1 at 13–14). Petitioner further contends that trial counsel improperly relied on the State's expert witnesses. (*Id.* at 13). Respondent argues that Petitioner cannot establish deficient conduct by second guessing trial counsel's strategic decision about whether to retain defense expert witnesses. (DE 13 at 19). Respondent further argues that Petitioner cannot establish *Strickland* prejudice because he failed to name a single expert witness, show that witness' availability, explain the content of that witness' proposed testimony, and demonstrate that the proposed testimony would be favorable to the defense. (*Id.*)

The gravamen of Petitioner's claim is that Detective Stevens testified falsely, but as discussed above, Petitioner has not established that any testimony given by Stevens was false. *See supra* Section IV.C. Additionally, Petitioner offers only his own speculation that some unnamed defense expert witnesses would have testified that crime scene investigators failed to follow standard operating procedures regarding evidence collection and preservation, that none of Petitioner's DNA was found near the victim, that his fingerprints were not found on the marble balls that were used to bludgeon Ms. Better, and that "it was physically impossible for the Petitioner to physically assault and murder the victim due to spatial distances between the victim and the Petitioner." (DE 1 at 13).

"A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004); *see also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Merely pointing to additional

evidence "that could have been presented" is not enough to show counsel performed deficiently. *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

Moreover, establishing *Strickland* prejudice stemming from counsel's failure to call a witness requires Petitioner to name the witness, demonstrate the witness was available to testify and would have done so, set out the content of the witness' proposed testimony, and show the testimony would have been favorable to a particular defense. *See Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (holding that to demonstrate prejudice on an uncalled witness claim, a petitioner must by "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable to a particular defense.") (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); s*ee also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*). Petitioner has not named any witness, much less shown availability or how the testimony would have benefited his defense. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 6 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**G. <u>Counsel's Failure to Call Exculpatory Witnesses</u>**

In claim 7, Petitioner argues that trial counsel was ineffective for failing to call exculpatory witnesses, specifically, his wife and two neighbors, to establish that the scar on his face was from a dog bite and that he did not suffer any noticeable cuts or lacerations on or around the date of the

murder. (DE 1 at 14). Respondent argues that any testimony about the dog bite would have been cumulative to the evidence the defense presented. (DE 13 at 20–21).

As noted above, deciding which witnesses to call is part of trial strategy and not subject to hindsight review. *Conklin*, 366 F.3d at 1204. More importantly, however, Petitioner cannot establish *Strickland* prejudice to the extent that he argues that trial counsel should have called more witnesses about the dog bite injury. *See Glock v. Moore*, 195 F.3d 625, 636 (11th Cir. 1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice), *cert. denied*, 531 U.S. 890 (2000). During Petitioner's trial, his counsel called as a witness the member of the defense team who located a record of the dog bite incident with Animal Care and Control; that record was introduced into evidence as Defendant's Exhibit 19. (DE 15-1 at T. 1048–50). In addition, trial counsel elicited a more fulsome explanation of the dog bite incident from Petitioner during his own testimony. (*Id.* at T. 1064–66). Therefore, further testimony about the dog bite incident would have been cumulative.

Likewise, Petitioner cannot demonstrate that his counsel acted unreasonably in not calling his wife to testify that Petitioner did not suffer any noticeable cuts or lacerations around the time of the murder. First, effective assistance does not require counsel to present all mitigation evidence even if the additional evidence would not have been incompatible with counsel's strategy. *Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000). Second, the testimony Petitioner now suggests his lawyer should have elicited would have been directly contrary to Petitioner's own admission that his blood was in the store and his supposition that he was bleeding from a cut when he was in the store on the day of the murder. (DE 15-1 at T. 1078–79). Finally, Petitioner has shown no likelihood of a different result in the outcome of his trial had his wife testified that

he had no noticeable lacerations at the time of the murder. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 7 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**H. <u>Counsel's Failure to Object to the State's Closing Argument</u>**

In claim 8, Petitioner argues that trial counsel was ineffective for failing to object to false statements made by the State in closing arguments. (DE 1 at 15–16). Specifically, Petitioner claims that the State argued to the jury that Petitioner manufactured his testimony to fit the evidence contained in the discovery materials turned over to the defense, which should have triggered an objection by trial counsel because he was aware that Petitioner had been denied access to the discovery package. (*Id.* at 15). Respondent argues that Petitioner's claim cannot satisfy either prong of *Strickland* because defense counsel had no good faith basis to object to the argument and that there was no reasonable probability such an objection would have been sustained. (DE 13 at 21).

Petitioner has not provided a citation to the statement made during closing argument to which he argues his counsel should have objected. A review of the State's closing argument does not include any allegation that Petitioner "manufactured" his testimony to fit the discovery materials. (DE 15-1 at T. 1105–30, 1161–70). During closing arguments, the State, at most, suggested that Petitioner did not testify honestly. (*Id.* at T. 1108, 1116–17, 1127). During cross-examination of Petitioner, the State elicited his concession that he reviewed the discovery package with his attorneys. (*Id.* at T. at 1092). But there simply is no allegation during closing arguments that Petitioner manufactured his testimony to fit the State's evidence that he reviewed with his

attorneys. In sum, Petitioner has not shown that there was valid basis for trial counsel to object to any statement made by the State in closing arguments, thus he has not established that trial counsel's performance was deficient. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.") Furthermore, Petitioner cannot establish *Strickland* prejudice because the trial court instructed the jury that what the lawyers say in closing arguments is not evidence and that the decision of whether the State proved Petitioner guilty beyond a reasonable doubt must be based on evidence alone. (DE 15-1 at T. 271, 1205). *See United States v. Bailey*, 123 F.3d 1381, 1402 (11th Cir. 1997) ("[A]ny possible prejudice to [defendant] resulting from the prosecutor's closing argument was cured by instructions from the district judge that the lawyers' arguments were not evidence and that the jury was to decide the case solely on the evidence presented at trial."). Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 8 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**I. <u>Counsel's Failure to Object to False Evidence</u>**

In claim 9, Petitioner argues that trial counsel was ineffective for failing to object to false evidence presented by the State. (DE 1 at 16–17). Specifically, Petitioner points to a video still shot of the cake cutter box, alleging that the State falsely argued that it had the same evidentiary value as a dedicated 35 mm photograph. (*Id.* at 16). Respondent argues that there is no merit to Petitioner's claim that the blow-up of the video still shot of the cake cutter box was "false" and points to trial counsel's efforts to challenge the police witnesses about the crime scene and any inconsistencies. (DE 13 at 22).

Petitioner has offered no basis for an objection to the video still shot on the grounds that it is not a 35 mm photograph. Under Florida's evidence code, "Photographs" include still photographs, X-ray films, videotapes, and motion pictures." Fla. Stat. Ann. § 90.951(2). There is nothing prejudicial about introducing still photographs taken from the videos. *Smith v. Geico Cas. Co*., 127 So. 3d 808, 811 (2d Fla. DCA 2013). Furthermore, Petitioner has not explained why he contends that the evidence was "false." Testimony at trial established who took the video and confirmed that it accurately represented the crime scene. (DE 15-1 at T. 444–45, 520–22, 554). Finally, trial counsel made it clear to the jury that there was no traditional 35 mm photograph of the cake cutter box: during cross-examination, trial counsel elicited crime scene investigator Held's concession that he never took a photo of the box or placed a marker near it. (*Id.* at T. 606–07). Again, in closing argument, trial counsel reminded the jury that there was no dedicated photograph of the cake cutter box and that instead the State offered a still shot derived from the video panning over the box. (*Id.* at T. 1146). Thus, Petitioner has not demonstrated deficient conduct by his trial counsel in not objecting to the still shot derived from the video.

Furthermore, Petitioner cannot establish *Strickland* prejudice because, even if the still shot had not been allowed into evidence, the jury viewed the entire video twice. (*Id.* at T. at 522, 1223–24). Thus, they saw the cake box cutter *in situ*. There is nothing to indicate any reasonable probability that the jurors would have reached a different verdict had they not seen the blow-up still shot taken from a video, which they viewed in its entirety. Nor would the absence of the still shot from the video have prevented the State from introducing the DNA evidence the collected from inside the box. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 9 is

**DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**J. <u>Counsel's Failure to Use Peremptory Challenges to Remove Potentially Biased Jurors</u>**

In claim 10, Petitioner argues that trial counsel was ineffective because he failed to utilize peremptory challenges during *voir dire* with respect to two jurors who disclosed close relatives employed by law enforcement. (DE 1 at 17). Respondent argues that Petitioner has not shown deficient conduct as it relates to the composition of the jury. (DE 13 at 23). Respondent further argues that Petitioner cannot demonstrate a reasonable probability that the outcome of his trial would have been different had trial counsel exercised peremptory strikes differently. (*Id.)*

Petitioner does not identify the two jurors he claims were related to law enforcement officers. During *voir dire*, the only potential juror to acknowledge a familial relationship to members of law enforcement was potential juror Palmer. (DE 15-1 at T. 218–19). She stated that her father-in-law, her brother, and her brother-in-law were employed as law enforcement officers and that, because of the oath they took as officers, she would find them more credible than a lay witness. (*Id.* at T. 219). When asked by the trial judge whether she would be able to listen to all the witnesses and treat them equally, however, she agreed that she could and would do that. (*Id.*, T. at 219–20).

A juror is competent under Florida law if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Carratelli v. State,* 961 So.2d 312, 324 (Fla. 2007). Because. Palmer stated that she would put aside her predisposition to believe law enforcement witnesses in the courtroom setting and listen to and evaluate all witnesses equally, Petitioner cannot show that trial counsel performed deficiently by not exercising a peremptory strike on Palmer. Similarly, Petitioner cannot

demonstrate *Strickland* prejudice stemming from the jury selection because he has made no showing that any juror on the panel was actually biased against him. *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a jury member hearing the case was actually biased against him). Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 10 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

**K. <u>Counsel's Failure to Properly Argue the Motion for Judgment of Acquittal</u>**

In claim 11, Petitioner argues that his trial counsel failed to properly argue for a judgment of acquittal. (DE 1 at 18). Specifically, Petitioner contends that trial counsel "failed to argue multiple points on record that proved state failed to meet its burden of proof and failed to prove elements of both charges. Evidence provided by the State was circumstantial, false, or in some cases exculpatory." (*Id.*). Respondent argues that the record demonstrates that trial counsel made appropriate arguments for judgment of acquittal but that the evidence against Petitioner was sufficient to allow the case to be decided by the jury. (DE 13 at 23).

Trial counsel argued that because the State's case was purely circumstantial, Petitioner was entitled to judgment of acquittal because the State did not rebut his hypothesis of innocence premised on the lack of evidence that Petitioner was ever near the body of Ms. Better. (DE 14-1 at 203–04). The trial court considered the argument under the standard applicable at the close of the State's case—taking all evidence in the light most favorable to the State—and found that there was sufficient evidence to continue. (*Id.* at 204). The trial court further considered the argument in light

of the defense offered by Petitioner and concluded that there was sufficient evidence for the jury to find him guilty. (*Id.*).

Other than his conclusory argument that the State's evidence was "circumstantial, false, or in some cases exculpatory," Petitioner does not explain what additional arguments trial counsel should have made in moving for judgment of acquittal. (DE 1 at 18). Counsel cannot be deficient for failing to raise a non-meritorious claim. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.") Furthermore, Petitioner cannot establish *Strickland* prejudice because he makes no showing that additional arguments in support the motion for judgment of acquittal would have been successful. Under Florida law, "a trial court should not grant a motion for judgment of acquittal unless the evidence adduced is such that no view that the jury may lawfully take of it favorable to the State can be sustained under the law." *Arnold v. State*, 892 So. 2d 1172, 1173 (Fla. 5th DCA 2005). Here, the vague and undefined arguments suggested by Petitioner do not create any probability of a different outcome. This is particularly true in light of the sufficiency of evidence of Petitioner's guilt. *See supra* Section IV.D. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 11 is **DENIED** as the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

### L. Cumulative Errors

In claim 12, Petitioner argues that trial counsel rendered ineffective assistance through the cumulative effect of the errors raised in the first eleven claims. (DE 1 at 18). Respondent argues

that there is no Supreme Court authority recognizing "cumulative error" in the context of an ineffective assistance claim. (DE 13 at 24).

Respondent is correct that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009). Even if such a claim was recognized, Petitioner could not prevail here. "The cumulative error doctrine provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (quoting U*nited States v. Baker*, 432 F.3d 1189, 1223 (11th Cir.2005), abrogated on other grounds by *Davis v. Washington*, 547 U.S. 813 (2006)) (internal quotation marks omitted). The Eleventh Circuit instructs courts addressing claims of cumulative error to first consider the validity of each claim individually, and then examine any errors found in the aggregate and in light of the trial as a whole to determine whether the petitioner was afforded a fundamentally fair trial. *Id.* (citing *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997)). When no error is found in the underlying claims, however, there can be no claim of cumulative error. *Id.* (citing *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005)); *see also United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984).

Petitioner has failed to establish any individual instance of ineffective assistance of trial counsel. *See supra* Sections IV.A–K. Therefore, his cumulative error claim is clearly without merit. Accordingly, the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Therefore, claim 12 is **DENIED** as

the State court's rejection of this claim in the Rule 3.850 proceeding was not an unreasonable application of *Strickland*.

## V. CERTIFICATE OF APPEALABILITY

Petitioner is advised that he has no absolute right to appeal this Court's final order denying his § 2254 Petition, but to do so, he must obtain a certificate of appealability ("COA"). *See Harbison v. Bell*, 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); *Wilkinson v. Dotson*, 544 U.S. 74, 78–83 (2005)). Thus, when a district court rejects Petitioner's constitutional claims on the merits, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court rejects a claim on procedural grounds, Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test. *Slack*, 529 U.S. at 484. Thus, upon consideration of the record, I find that no certificate of appealability shall issue.

## VI. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner's § 2254 Petition (DE 1) is **DENIED;**
2. Judgment in favor of the Respondent will be entered by way of a separate Order;
3. All pending motions not otherwise ruled upon are **DENIED as moot**; and,

3. A Certificate of Appealability is **DENIED.**

**SIGNED** in Chambers at West Palm Beach, Florida, this 14th day of October, 2026.

Donald M. Middlebrooks
United States District Judge

**Copies furnished to:**

**Todd Barket,** ***pro se***
N70609
Jefferson Correctional Institution
Inmate Mail/Parcels
1050 Big Joe Road
Monticello, FL 32344

**Richard Chambers Valuntas**
Florida Attorney General's Office
1515 N. Flagler Dr. #900
West Palm Beach, FL 33401
561-837-5016
Fax: 561-837-5108
Email: CrimAppWPB@MyFloridaLegal.com

**Noticing 2254/2241 SAG Broward and North**
Email: FederalHabeas@myfloridalegal.com